IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BERNARD CHRIS LAREZ,

        Petitioner,

v.                                                  CIV 99-880 MV/KBM

LAWRENCE TAFOYA, WARDEN, and
ATTORNEY GENERAL FOR THE STATE
OF NEW MEXICO,

        Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

        This matter is before the Court on Bernard Chris Larez's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (*Doc. 1*) and Respondents' Motion To Dismiss (*Doc. 13*). Having considered the arguments, pleadings, and relevant law, I will recommend that Respondents' motion be granted and that the petition be dismissed.

### I. Procedural Background

        Following a jury trial in October 1997 where he was represented by counsel, Petitioner was convicted of one count of burglary. The prosecution adduced evidence that the victim did not know Petitioner or give Petitioner have permission to be in his house. A fingerprint[1] found on a television stand in the victim's home matched that of Petitioner.

        Two police officers gave the expert testimony on the prints. The first officer, who had

---

    [1] In some places the record refers to finger prints and in others a palm print. For the sake of clarity and consistency, I will just refer to "prints."

investigated the crime, compared the print from the scene with the prints of several others, including Petitioner, and testified that eighteen "points" matched Petitioner's print. The second officer compared Petitioner's print to the one found in the victim's home and was of the opinion that they matched. The defense moved for a directed verdict, which was denied, and presented no defense. After an enhancement for being a habitual offender, Petitioner was sentenced to four years incarceration and two years parole. *Answer, Exh. A* (all citations to exhibits are to those provided in the Answer unless otherwise noted).

On direct appeal where he was represented first by trial counsel and then by another attorney, Petitioner argued that the trial court erred in denying his motion for a directed verdict. The New Mexico Court of Appeals construed the argument as raising a sufficiency of the evidence claim and denied it stating:

> Defendant continues to contest the sufficiency of the evidence to support his conviction, asserting that the State's fingerprint evidence was not sufficient to identify him beyond a reasonable doubt as the person who entered [the victim's] house without permission and removed some of the contents. Defendant's arguments go to the weight and credibility of the fingerprint evidence, and they were for the jury to resolve. *See State v. Anderson*, 118 N.M. 284, 302-03, 881 P.2d 29, 47-48 (1994) (dispute over whether procedure for DNA testing was flawed are for the trier of fact to resolve). We hold that the evidence was sufficient to support Defendant's conviction.

*Exh. E., p. 2* (not reported). The New Mexico Supreme Court denied certiorari on May 5, 1998. *State v. Larez*, 125 N.M. 146 (N.M. 1998) (unpublished).

One year later and proceeding *pro se,* Petitioner sought habeas corpus relief in the state courts raising claims concerning the manner in which he was printed, the composition of the jury, and ineffective assistance of counsel. The "Petition for Writ of Habeas Corpus" form used by

Petitioner in the state court proceedings did not ask the filer to indicate if an evidentiary hearing was sought, and Petitioner did not otherwise request an evidentiary hearing.  The district judge did not hold a hearing *sua sponte* and denied the petition in a two-sentence order stating:

> the Court having considered both the Petition and the Response as well as the court file in this matter finds that the Petition should be, and it hereby is denied.  The evidentiary matters raised in this Petition have either been considered on direct appeal or are otherwise without merit.

*Exh. K.*  The New Mexico Supreme Court denied certiorari on July 23, 1999.  *Exh. M.*  The instant petition was filed on August 6, 1999, raising the same claims as in the state habeas proceedings.

## II.  AEDPA Standard of Review

Under cases governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court cannot grant a writ of habeas corpus unless (1) the state court decision is "contrary to, or involved an unreasonable application of . . . Supreme Court" precedent or (2) is "an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. §§ 2254(d)(1)-(2).  As recently explained by the Supreme Court, a federal habeas court can only grant the writ if it finds that the

> state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law; decided the case differently than the Supreme Court has on a set of materially indistinguishable facts; or unreasonably applied the governing legal principle to the facts of the prisoner's case . . . [the writ may not issue] simply because we conclude in our independent judgment that the state court applied the law erroneously or incorrectly.  Rather, we must be convinced that the application was also objectively unreasonable.

*Van Woudenberg v. Gibson,* 211 F.3d 560, 566 & n. 4 (10th Cir. 2000) (citing *Williams  v.*

3

*Taylor,* 529 U.S. ___ , 120 S.Ct. 1495 (2000)).

The AEDPA standards apply, where as here, it is evident that the state court considered the claim on the merits as opposed to rejecting the claim on a procedural ground but did not provide its reasoning or citation to authority. Although the state court result is entitled to deference, where there is no "reasoned application of the law to the facts," the federal habeas court must engage in an

> independent review of the record and pertinent federal law [to ascertain whether] the result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented. This 'independent review' should be distinguished from a full *de novo* review of petitioner's claims.

*Aycox v. Lytle,* 196 F.3d 1174, 1176 (10th Cir. 1999).

### III.  Analysis

#### A.  Jury Composition and *Batson* Challenges

Petitioner asserts that all of the members of his jury were white, and therefore the "racial composition of the jury venire [was] not fair and reasonable in relation to the number of such persons in the community." *Pet's Opposition at 3.* Petitioner also contends that the prosecutor used peremptory challenges in order to obtain the all-white jury.

The Sixth Amendment that requires that petit juries in criminal trials be "drawn from a fair cross section of the community." *Taylor v. Louisiana,* 419 U.S. 522, 527 (1975). However, "this does not guarantee that a petit jury will be of any particular composition. . . .  Instead, it requires only that the pools of names 'from which [petit] juries are drawn must not systematically exclude distinctive groups in the community.'" *Trice v. Ward,* 196 F.3d 1151, 1163-1164 (10th

4

Cir. 1999) (quoting *Taylor*).  To establish that the prosecutor exercised peremptory challenges in violation of *Batson v. Kentucky,* 476 U.S. 79 (1986), Petitioner must establish, among other things, that the "prosecution has exercised peremptory challenges to remove members of a particular race from the venire." *United States v. Johnson,* 941 F.2d 1102, 1107 (10th Cir. 1991).

Plaintiff fails make either showing.  In fact, the record establishes the contrary.  The trial judge signed a certification of randomized jury selection form indicating that the panel in Petitioner's case was chosen by "a random computer sort."  The form illustrates that Hispanics were represented in the panel from which petitioner's jury was chosen.  The form further establishes that the prosecutor exercised peremptory challenges only against potential jurors with Anglo surnames.  Moreover, two jurors with Hispanic surnames served on Petitioner's jury.  *Exh. J.*  Accordingly I find that the state judge's habeas decision was not contrary to or an unreasonable application of long-established Supreme Court precedent.

### B.  Trial Counsel's Alleged Failure To Challenge A Juror

Petitioner alleges that one of the jurors was "a friend" of an officer who testified and that his trial counsel was ineffective in failing to challenge this juror.  The two-prong test announced in *Strickland v. Washington,* 466 U.S. 668 (1984) governs ineffective assistance of counsel claims under federal constitutional standards in post-AEDPA cases.  *E.g., Mayes v. Gibson,* 210 F.3d 1284 (10th Cir. 2000).  Petitioner fails to meet either prong.

Petitioner must first show that counsel's representation was "objectively unreasonable." *Clayton v. Gibson,* 199 F.3d 1162, 1177 (10th Cir. 1999), *petition for cert. filed 5/20/00.*  In doing so, he must overcome the "strong presumption" that counsel's conduct falls within the "wide range" of conduct that is considered to be trial strategy and is deemed "reasonable

5

professional assistance." *Moore v. Gibson,* 195 F.3d 1152, 1178 (10th Cir. 1999), *cert. denied,* 120 S.Ct. 2206 (2000); *see also Hawkins v. Hannigan,* 185 F.3d 1146, 1152 (10th Cir. 1999). An attorney's actions during voir dire are "presumed" to be matters of trial strategy. *Fox v. Ward,* 200 F.3d 1286, 1294 (10th Cir. 2000) (citing *Nguyen v. Reynolds,* 131 F.3d 1340, 1349 (10th Cir. 1997), *cert. denied,* 525 U.S. 852 (1998)).

Petitioner must also establish "prejudice" – absent counsel's errors, there is a "reasonable probability" that the outcome of the trial would have been different. *Moore,* 195 F.3d at 1178; *Foster v. Ward,* 182 F.3d 1177, 1185 (10th Cir. 1999), *cert. denied,* 120 S.Ct. 1438 (2000). At trial, *two* officers testified as experts concerning the match of the prints. Even assuming that a juror was a friend of one of them, Petitioner's conclusory allegation is insufficient to either overcome the presumption of objective reasonableness or to establish prejudice.

### C. Petitioner's Claims Concerning The Manner In Which His Prints Were Taken

Petitioner asserts that the officers taking his prints refused to provide an attorney at that time, and used excessive force in taking them. He contends that such conduct violates his Fourth, Sixth, and Fourteenth Amendment rights and rendered the print evidence inadmissible pursuant to the exclusionary rule. His trial attorney was allegedly ineffective because he refused to investigate his allegations and file a motion to suppress the print evidence. Larez further argues that his attorneys were ineffective in failing to raise the issue on appeal.

#### 1. There Is No Right To Presence of Counsel While Taking Prints

Based on Petitioner's statement that he was "booked" and Respondent's assertion that he had been arrested, I will assume that the Sixth Amendment right to counsel had attached. *McNeil v. Wisconsin,* 501 U.S. 171, 175 (1990) ("Sixth Amendment right . . . does not attach until a

prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment") (internal quotations omitted).

However, counsel is only required at "critical stages."  It has been long established that preparatory steps such as systematized or scientific analyzing of accused's fingerprints, blood sample, clothing, hair, and the like are not critical stages of proceedings at which accused has right to presence of counsel.  *United States v. Wade,* 388 U.S. 218, 227-228 (1967).  Thus, denial of right to have counsel present at such analyses does not violate Sixth Amendment.

Even if counsel had been present, Petitioner had no right to refuse to give his prints.  He was printed incident to his arrest as well as pursuant to a court order obtained following his initial refusal to be printed.  Regardless of counsel's presence or advice, the prints would have taken, just as other forced minor intrusions like urine, blood, and breathalyzer tests are permitted following arrest.  Compelling an arrestee to give incriminating prints without his consent simply does not violate the Constitution.  *See e.g, South Dakota v. Neville,* 459 U.S. 553, 563 (1982)*; Schmerber v. California,* 384 U.S. 757, 766 (1965).

### 2. *Stone v. Powell* Precludes Relief Based On Fourth Amendment Claims

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone v. Powell,* 428 U.S. 465, 494 (1976); *see also Smallwood v. Gibson,* 191 F.3d 1257, 1265 (10th Cir. 1999), *petition for cert. filed 3/9/00.*  In the present case, Larez not only could but did raise his claim in a state proceeding where the state court was empowered to hold evidentiary

7

proceedings to resolve the claim. *See SCRA 5-802(E)(3),* Thus, I find that the "opportunity" requirement is satisfied. *See Miranda v. Cooper,* 967 F.2d 392, 4012 (10th Cir.), *cert. denied,* 506 U.S. 924 (1992); *Gamble v. Oklahoma,* 583 F.3d 1161, 1164-65 (10th Cir. 1978).[2] As such, his Fourth Amendment claim, ***in and of itself,*** is not a basis for federal habeas relief.

### 3. Appellate Counsel Was Not Ineffective Nor Was Petitioner Prejudiced

Appellate counsel need not raise every conceivable issue on direct appeal to render effective assistance, only those that are obvious from the trial record and would result in reversal. *See e.g., United States v. Cook,* 45 F.3d 388, 394 (10th Cir. 1995). In New Mexico, a claim of ineffective assistance of counsel will not be entertained on direct appeal where, as here, evidence outside the record is presented in support of the claim. *See Duncan v. Kerby,* 115 N.M. 344, 346 (N.M. 1993). Instead, the preferred method is for these claims to be raised in postconviction proceedings. *Id.* Moreover, Petitioner's claims were in fact raised in the state habeas proceedings, briefed and decided on the merits, and is preserved for federal habeas review. Under these circumstances, appellate counsel was not ineffective nor was Petitioner prejudiced by the choices made by his appellate attorneys. *See Newsted v. Gibson,* 158 F.3d 1085, 1090 (10th Cir. 1998), *cert. denied,* 526 U.S. 1093 (1999).

### 4. Counsel's Alleged Failure To Investigate And File A Motion To Suppress

Even though *Stone v. Powell* doctrine bars review of a suppression claim, a federal habeas

---

[2] As a recent Tenth Circuit opinion noted, *Miranda* and *Gamble* emphasize the *procedural opportunity* component. *Bivens v. Hargett,* 1999 WL 7729 (10th Cir. 1/11/99) (unpublished). *Stone* was found to bar a Fourth Amendment claim based upon an attorney's failure to appear at suppression hearing because the claim was briefed on appeal, the appellate court appeared to consider claim on merits, and, as here, Petitioner raised a related ineffective assistance of counsel claim for counsel's failure to appear and pursue the motion.

court may review ineffective assistance of counsel claims if based on counsel's failure to pursue a motion to suppress. For these claims, Petitioner must again meet the two-prongs of the *Strickland* test. Larez bears and additional burden, however.

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the *defendant must also prove* that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Kimmelman v. Morrison,* 477 U.S. 365, 375 (1985) (emphasis added); *see also e.g. Huynh v. King,* 95 F.3d 1052, 1058 (11th Cir. 1996).

It is well-settled law that officers are entitled to use force to secure the fingerprints or blood of an arrestee who is resisting. Only when the level of force is objectively unreasonable under all of the circumstances will the force amount to a constitutional violation. *E.g., Graham v. Connor,* 490 U.S. 386, 395 (1989) ("all claims that law enforcement officers have used excessive force . .. in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard."); *Neville,* 459 U.S. at 559 n. 9 ("*Schmerber* [384 U.S. at 760 n.4] did caution that due process concerns could be involved if the police initiated physical violence while administering the test . . . or responded to resistance with inappropriate force."); *Ruppel v. Ramseyer,* 33 F.Supp.2d 720, 724 (C.D. Ill. 1999) (grabbing an arm to force submission to a blood test not excessive force).

In a case with strikingly similar facts to the one at bar, the court rejected a claim for violation of Fourth Amendment rights. Upon being booked on the burglary charges, the suspect refused to be printed and, as in the present case, the officers obtained a court order for the prints.

9

> Once an individual is in lawful custody, law enforcement officers have complete discretion to obtain his fingerprints either with or without a court order and even in the absence of any additional finding of probable cause. . . . Because of the importance of fingerprints as a means of identification, the Fourth Amendment constitutes no impediment to fingerprinting a suspect arrested upon probable cause. . . . Similarly, the protection of the Fifth Amendment does not extend to fingerprints. . . . Defendants, who were obeying a judicial order to secure Plaintiff's fingerprints, were therefore acting fully within the scope of their authority as law enforcement officers.
>
> Moreover, it does not appear that the level of force used by Defendants exceeded that necessary to subdue Plaintiff so that he could be fingerprinted, or that it resulted in any cognizable injury to Wysner. Although Plaintiff contends that he experienced pain in his head and neck as a consequence of being thrown to the floor, his medical records indicate that he suffered no recognizable physical harm.

*Wysner v. Dallas County Sheriff's Dept.,* 1997 WL 10030 (N.D.Tex. 1/7/97) (attached).

Larez admits that he continued to refuse to provide his prints even after officers returned with a court order. Petitioner accedes that it was only after what he characterizes as a "beating" from three officers that he acquiesced to giving the prints. *Exh. H.* I take judicial notice that Larez filed a § 1983 claim in this court based on the identical allegation. *See Larez v. Moore,* CIV 99-579 MV/LCS.[3] Larez there complained that he was "punched," "kicked," and had his head "slammed into the floor" and was denied proper medical care afterward. However, that claim was dismissed in January of this year because Petitioner alleged no more than a *de minimus* injury. When he asked for medical treatment, Larez acknowledged that he was given Tylenol and made no allegation that it was insufficient to relieve whatever pain he experienced. Larez'

---

[3] The only other suit Petitioner has pending in this Court is one that a number of inmates have filed challenging their confinement in a facility run by a private corporation. *Larez v. Moore,* CIV 00-778 MV/DJS.

objections were overruled, and the Tenth Circuit dismissed his appeal on April 4, 2000 on Larez's own motion.

Again Petitioner fails to allege facts, as opposed to conclusions, sufficient to establish the force was excessive. As is routine, the officers were entitled to take prints upon booking. Yet Petitioner resisted apparently under the mistaken belief that self-incrimination or counsel rights were implicated. The officers responded to his initial resistance by obtaining a court order in an apparent attempt to persuade him of the lawfulness of their print request. Yet Petitioner continued to resist giving his prints.

Petitioner has never been forthcoming in detailing the level of his own resistance. However, Petitioner's description of how the officers handled him are consistent with an appropriate amount of force to counter a struggling and resisting arrestee. None of Larez' concrete allegations of fact could support a finding that the officers exceeded the necessary level of force to accomplish their lawful objective. Thus, it was objectively reasonable for counsel to have foregone further investigation of how the prints were obtained. Instead, counsel reasonably focused on challenging the testimony matching the print found at the scene to Petitioner's prints, the key to the prosecution's case against him.[4]

Under these circumstances, Petitioner cannot establish that his suppression motion would have been granted or that counsel's conduct was unreasonable. As such, I also cannot conclude that the result of the state habeas proceedings was contrary to established Supreme Court

---

[4] Larez asserts that his attorney cavalierly dismissed filing a motion to suppress and attributes him with saying that the police "were going to get his palm print any way." Given Larez' status as an habitual offender, the statement could reflect counsel's view that prints obtained from prior bookings could be admissible even if he succeeded on a suppression motion.

11

precedent.

Wherefore,

**IT IS HEREBY RECOMMENDED THAT:**

1. Respondents' Motion To Dismiss (*Doc. 13)* be granted;

2. Petitioner's Motion For Appointment of Counsel *(Doc. 3)* be denied; and

3. The petition be dismissed with prejudice.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1).  **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

1997 WL 10030
**(Cite as: 1997 WL 10030 (N.D.Tex.))**

Only the Westlaw citation is currently available.

United States District Court, N.D. Texas, Dallas Division.

**Robert B. WYSNER, Plaintiff,
v.
DALLAS COUNTY SHERIFF'S DEPARTMENT et al., Defendants.**

Civ.A. No. 3:96-CV-1011-P.

Jan. 7, 1997.

MEMORANDUM OPINION AND ORDER

SOLIS, District Judge.

**\*1** Now before the Court are Defendants' Motion to Dismiss and for Summary Judgment and Brief in Support, filed September 30, 1996, Plaintiff's Brief in Opposition to Summary Judgment, filed October 21, 1996, and Plaintiff's Affidavit in Opposition to Defendant's Motion to Dismiss and for Summary Judgment and Brief in Support, filed on the same date. For the reasons stated below, the Court is of the opinion that Defendants' motion should be granted.

BACKGROUND

This is a civil rights claim brought by Plaintiff Robert Wysner, a Texas Department of Criminal Justice prisoner proceeding pro se, against Defendants pursuant to 42 U.S.C. § 1983. [FN1] In his complaint, Wysner alleges that he was the victim of a physical assault perpetrated against him by Defendants on April 16, 1991, immediately prior to his trial in the 282nd District Court of Dallas County for unspecified criminal charges. More specifically, Wysner contends that Defendants, who were Dallas police officers and court bailiffs employed by the Dallas County Sheriff's Department, requested that he provide them with a fingerprint exemplar which was to be used as evidence at trial. Insisting that he possessed a Fifth Amendment privilege not to provide evidence that might incriminate him, Wysner refused to comply unless Defendants could produce a court order authorizing this action. In response to Wysner's refusal to cooperate, several sheriff's deputies proceeded to restrain him in order to obtain the fingerprints by force.

> FN1. This lawsuit represents the remnants of an earlier case filed by Plaintiff which, in addition to asserting a claim for excessive use of force, also sought monetary damages for

alleged violations of Plaintiff's Fourth and Fifth Amendment rights based upon Plaintiff's assertion that Defendants had used illegally obtained fingerprints as evidence against him in his criminal trial. Wysner v. Dallas County Sheriff's Department et al., Cause No. 3:92-CV-1823-P. Because those allegations implicated the validity of Plaintiff's criminal conviction, Plaintiff's case was held in abeyance pending exhaustion of Plaintiff's state remedies and the outcome of collateral challenges to his conviction. On May 29, 1996, the Court granted Plaintiff's motion to withdraw his civil claims from abeyance exclusively as to his cause of action for excessive use of force and ordered that claim to be refiled as the instant action.

Plaintiff's present complaint is based upon his assertion that Defendants employed excessive force in their efforts to fingerprint him in that they wrestled him against a wall, lifted him off the floor, and then placed a choke hold on Plaintiff until he lost consciousness. As a result of Defendants' alleged physical assault, Plaintiff claims to have suffered substantial pain in his head and neck and to have experienced mental anguish. Defendants' use of force as a means of obtaining his fingerprints, Plaintiff maintains, was unnecessary since his prints had already been taken during book-in and thus were fully available to Defendants.

Defendants now seek summary judgment as to Plaintiff's claim on four grounds:  (1) Plaintiff has failed to serve Defendants Murdock, Heart, Williams, and Smith with process; (2) Defendant Dallas County Sheriff's Department is not a legal entity amenable to suit; (3) Plaintiff has failed to state an actionable claim for excessive use of force; and (4) Defendants Bolin and Deen are entitled to qualified immunity.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party must identify the evidence on file in the case which establishes the absence of any genuine issue of material fact. Celotex, 477 U.S. at 323.

**\*2** Once the moving party has made an initial showing, the party opposing the motion must offer evidence sufficient to establish the existence of essential elements of the party's case. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment; the party defending against a motion for summary judgment cannot defeat the motion unless it provides specific facts that show the case presents a genuine issue of material fact, such that a jury might return a verdict in its favor. Anderson, 477 U.S. at 256-57. Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgement are likewise insufficient to defeat a proper

motion for summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990).

All evidence and the inferences to be drawn therefrom "must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, 369 U.S. 654, 655 (1962); Marshall v. Victoria Transp. Co., 603 F.2d 1122, 1123 (5th Cir. 1979). However, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case on which it will bear the burden of proof at trial, summary judgment must be granted. Celotex, 477 U.S. at 322-23.

## DISCUSSION

### A. PLAINTIFF'S FAILURE TO SERVE DEFENDANTS MURDOCK, HEART, WILLIAMS AND SMITH

Defendants submit that Plaintiff's claims against Defendants Murdock, Heart, Williams and Smith are subject to dismissal because Plaintiff has failed timely to serve these Defendants with process as required by Federal Rule of Civil Procedure 4(m). Plaintiff responds only by requesting that he be granted a continuance under Rule 56(f) of the Federal Rules of Civil Procedure in order to conduct discovery to determine whether service has been effected. Rule 56(f), however, is not an appropriate procedural device to avoid dismissal for failure to comply with the requisites of Rule 4(m). Furthermore, the returns of service on file with this Court indicate that service could not be executed with regard to Defendants Murdock, Heart, Williams and Smith. As more than 120 days have elapsed since Plaintiff filed his present action on May 29, 1996, and as Plaintiff has failed to show good cause for his failure to serve these individuals, Plaintiff's claims against these Defendants will be dismissed without prejudice. Fed. R. Civ. P. 4(m).

### B. PLAINTIFF'S CLAIMS AGAINST THE SHERIFF'S DEPARTMENT

Defendants next argue that Plaintiff's § 1983 claim against the Dallas County Sheriff's Department must likewise be dismissed because the department is not a separate legal entity amenable to suit. The Court agrees. A political subdivision cannot sue or be sued unless it has been granted an independent legal existence and hence the capacity to engage in separate litigation. Darby v. Pasadena Police Dep't, 939 F.2d 311, 313-14 (5th Cir. 1991). Absent an express grant of jural authority, county sheriff's departments in the State of Texas "generally are not legal entities capable of being sued." Jacobs v. Port Neches Police Dep't, 915 F. Supp. 842, 844 (E.D. Tex. 1996). No evidence has been presented to this Court that the Dallas County Sheriff's Department enjoys a separate legal existence; therefore, the Sheriff's Department cannot be joined as a Defendant in this action and is entitled to judgment in its favor as a matter of law. See Rideau v. Jefferson County, 899 F. Supp. 298, 301 (E.D. Tex. 1995).

### C. THE MERITS OF PLAINTIFF'S § 1983 CLAIM

**\*3** Having found summary judgment proper as to Plaintiff's claims against the Dallas County Sheriff's Department and Defendants Murdock, Heart, Williams and Smith, the Court must now consider

whether Plaintiff has stated an actionable claim against the only remaining Defendants, Deputies Bolin and Deen. It is well established that the Constitution protects both prisoners and pretrial detainees from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986), by prohibiting jail officials and law enforcement officers from using excessive force in their dealings with inmates. Convicted prisoners accordingly may assert a constitutionally protected right against the State to be free from cruel and unusual punishment under the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Hamilton v. Lyons, 74 F.3d 99, 103 (5th Cir. 1996). Pretrial detainees, by comparison, can draw on the procedural and substantive due process guarantees of the Fourteenth Amendment to claim rights that are at least coextensive with the rights of prisoners. Bell v. Wolfish, 441 U.S. 520 (1979); Partridge v. Two Unknown Police Officers, 791 F.2d 1182, 1186 (5th Cir. 1986).

In determining whether a prison official has employed excessive physical force against an inmate in violation of the inmate's constitutional rights, the court should focus its inquiry on the question "whether force was applied in a good- faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). In addition, a plaintiff raising an excessive use of force claim must show that the alleged use of force resulted in some injury to him. Eason v. Holt, 73 F.3d 600, 601-02 (5th Cir. 1996). In other words, the court "must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Hudson, 503 U.S. at 8 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

In their summary judgment affidavits, Defendants Bolin and Deen aver that Wysner had been ordered to submit his fingerprint exemplars to the court in connection with criminal proceedings against him, that he refused to comply, and that he therefore had to be restrained so that fingerprints could be taken. Bolin Aff.; Deen Aff. Plaintiff's protestations to the contrary notwithstanding, nothing in the record indicates that Defendants' reaction to Wysner's refusal to submit to fingerprinting was anything other than reasonable, or that Defendants were motivated by malice rather than a desire to maintain basic discipline. Once an individual is in lawful custody, law enforcement officers have complete discretion to obtain his fingerprints either with or without a court order and even in the absence of any additional finding of probable cause. United States v. St. Onge, 676 F. Supp. 1041, 1043 (D. Mont. 1987). Because of the importance of fingerprints as a means of identification, the Fourth Amendment constitutes no impediment to fingerprinting a suspect arrested upon probable cause. Boling v. Romer, No. 96-1115, 1996 WL 687886, at *2 (10th Cir. Dec. 2, 1996). Similarly, the protection of the Fifth Amendment does not extend to fingerprints. In re Grand Jury Proceedings, 632 F. Supp. 374, 375 (E.D. Tex. 1986); Alford v. Northeast Ins. Co., 102 F.R.D. 99, 101 (N.D. Fla. 1984). Defendants, who were obeying a judicial order to secure Plaintiff's fingerprints, were therefore acting fully within the scope of their authority as law enforcement officers.

**\*4** Moreover, it does not appear that the level of force used by Defendants exceeded that necessary to subdue Plaintiff so that he could be fingerprinted, or that it resulted in any cognizable injury to Wysner. Although Plaintiff contends that he experienced pain in his head and neck as a consequence of being thrown to the floor, his medical records indicate that he suffered no recognizable physical

16

harm. Stacy Aff. at 2. Thus, the nurse who examined Wysner on the following day noted that he had no marks, bruises, or discolorations on his head or neck, and x-rays of Wysner's neck showed no sign of injury. Id. This Circuit no longer requires a showing of "substantial injury" as a prerequisite to an actionable excessive use of force claim; nevertheless, the extent of injury incurred by an inmate represents a relevant indicator of the reasonableness of the officers' underlying conduct. Hudson, 503 U.S. at 7. Plaintiff's injuries, if they existed, were at best de minimis and do not indicate the type of wanton and malicious behavior that can sustain a civil rights claim for excessive use of force. Consequently, the Court finds that, as a matter of law, Plaintiff cannot prevail on his § 1983 claims against Defendants Bolin and Deen.

 D. THE QUALIFIED IMMUNITY DEFENSE AS APPLIED TO DEFENDANTS BOLIN AND DEEN

 Defendants also suggest that, even if Plaintiff can state an actionable § 1983 claim against Bolin and Deen, summary judgment would be proper in this matter because these Defendants are protected from suit by the defense of qualified immunity. As a general rule, a public official enjoys a qualified "immunity from suit," not just immunity from liability. Salas v. Carpenter, 980 F.2d 299, 301 (5th Cir. 1992) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Government officials are thus entitled to qualified immunity so long as "their conduct does not violate clearly established rights of which a reasonable person would have known." See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Within the Fifth Circuit, this has been held to give rise to a two-pronged test for qualified immunity, requiring the plaintiff to show not only that the defendants violated a clearly established constitutional right but also that their conduct was objectively unreasonable. Spann v. Rainey, 987 F.2d 1110, 1114 (5th Cir. 1993) (citing Siegert v. Gilley, 500 U.S. 226, 231-32 (1991)); see also Anderson v. Creighton, 483 U.S. 635 (1987).

 In connection with the first element of the qualified immunity test, a defendant may be held liable for his conduct only if it is demonstrated both that his actions resulted in the violation of a constitutional right and that "a reasonable official would understand that what he is doing violates that right." Kiser v. Garrett, 67 F.3d 1166, 1170 (5th Cir. 1995). In this case, Defendants acted in a good faith effort to respond to a court directive to obtain Wysner's prints and pursuant to a well-established right to fingerprint jail detainees. In doing so, they did not employ a degree of force greater than that necessary to take the fingerprints. Given these circumstances, the Court is of the opinion that Defendants did not violate Wysner's constitutional right to be free from punishment, and that a reasonable official would not have realized that Defendants' efforts to restrain Wysner would result in a constitutional violation. The Court furthermore finds that Defendants acted reasonably.

 **\*5** Defendants, therefore, are immune from liability with respect to the conduct of which Plaintiff complains, entitling them once again to summary judgment on Plaintiff"s § 1983 claims.

CONCLUSION

Upon thorough consideration of the parties' arguments and evidence in light of applicable law, the Court hence concludes that Defendants' motion for summary judgment is well taken and should be GRANTED.

So Ordered.          END OF DOCUMENT